IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 13, 2025

## STATE OF TENNESSEE v. MARCUS DEJUAN PERKINS

**Appeal from the Circuit Court for Maury County**
No. 28960     J. Russell Parkes, Judge
_____

### No. M2024-00506-CCA-R3-CD
_____

A Maury County jury convicted the Defendant, Marcus Dejuan Perkins, of rape, and the trial court sentenced him to nine years' imprisonment. On appeal, the Defendant argues that the trial court abused its discretion by misapplying an enhancement factor and denying an alternative sentence to incarceration. Upon our review, we respectfully disagree and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which J. ROSS DYER and KYLE A. HIXSON, JJ., joined.

Jessica F. Butler, Assistant Public Defender – Appellate Division, Tennessee District Public Defenders Conference (on appeal); Travis Jones, District Public Defender; and Amanda L. Dunavant, Assistant District Public Defender (at sentencing), for the appellant, Marcus Dejuan Perkins.

Jonathan Skrmetti, Attorney General and Reporter; Elizabeth Evan, Assistant Attorney General; Brent Cooper, District Attorney General; and Jonathan W. Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

### A.    THE CRIME AND INVESTIGATION

On October 31, 2020, the Defendant celebrated his twenty-third birthday by visiting a haunted woods exhibit with the victim and her boyfriend. The Defendant and the victim were close friends and referred to themselves as "cousins," although they were unrelated. They resided in the same household, along with the Defendant's aunt and the victim's mother and boyfriend.

The birthday celebration continued later that evening with the Defendant and the victim going to a local bar known as The Rusty Duck. The victim, who was underage at the time, consumed between five and ten alcoholic beverages that the Defendant purchased for her. She later described herself as being heavily intoxicated, losing consciousness, and sustaining a head injury.

As the evening progressed, the victim became unwell. The Defendant escorted her from the bar and placed her in the back seat of the car, where she vomited due to intoxication. According to the victim, the Defendant joined her in the back seat, pulled her pants down, and then penetrated her sexually without her consent. When she resisted and screamed, he struck her in the mouth with a closed fist. She stated that she passed out and awoke in a Waffle House parking lot, where the Defendant had gone inside.

While alone in the car, the victim recorded a video in which she said she believed the Defendant had raped her. Shortly thereafter, the victim told several bystanders that she had been assaulted, initially attributing the attack to three individuals. She later explained that she was afraid to name the Defendant because she feared he would retaliate.

Upon returning home in the early morning hours of November 1, 2020, the victim asked her boyfriend to contact the Columbia Police Department. She was transported to the emergency room, where medical personnel noted that her narrative was "convoluted and confusing." She initially claimed the incident occurred at home, but later said it happened in the car. Medical professionals observed a busted lip and bruising on her arms.

2

On November 2, 2020, the victim met with detectives and completed a forensic examination. A DNA analysis conducted by the Tennessee Bureau of Investigation revealed that the sperm sample taken from the victim's cervix matched the Defendant's DNA profile.

## B. TRIAL AND VERDICT

In April 2021, a Maury County grand jury charged the Defendant with rape, a Class B felony offense. The case proceeded to trial on April 20, 2023. At trial, the victim testified to the events of the night, including her recollection of being sexually assaulted by the Defendant and her fear of naming him immediately after the incident. Other witnesses included law enforcement and medical personnel. The jury found the Defendant guilty as charged.

## C. SENTENCING HEARING AND APPEAL

The trial court held a sentencing hearing on November 17, 2023. The Defendant qualified as a Range I, standard offender following his conviction for rape. The permissible sentencing range for the offense was eight to twelve years. The court acknowledged that it retained discretion to impose a fully probated sentence, a period of split confinement, or a sentence of incarceration in the Tennessee Department of Correction.

The State argued that enhancement factor (7)—that the defendant committed the offense to gratify his desire for pleasure or excitement—applied to the Defendant's conduct. *See* Tenn. Code Ann. § 40-35-114(7) (2019). The trial court ultimately agreed, stating on the record that this "enhancement factor would, in fact, be applicable in this case."

The State also submitted as evidence the presentence report with the required risk and needs assessment. That report included a victim impact statement in which the victim described physical injuries, including bruising and a busted lip, and recounted suffering emotional trauma, including depression and suicidal ideation. The victim stated that the offense caused her to withdraw socially and left her unable to trust others. She further reported residual physical effects and requested that the Defendant receive a ten-to-twelve-year sentence, stating that a lighter sentence "will do nothing. They will do it again."

The State did not present any additional witnesses at the hearing, but it did introduce a psychosexual evaluation, which was admitted as Exhibit 3. That evaluation indicated

3

that the Defendant failed to acknowledge any responsibility for the offense and showed poor credibility regarding his sexual history. It further noted his claim that he "knew [the victim] was slow," but denied knowing any specific cognitive limitations. The evaluation concluded that his overall insight and accountability were limited.

In response, the defense submitted Collective Exhibit 2, which consisted of the Defendant's GED test scores and several vocational certificates earned while incarcerated. The Defendant also presented one witness, Shelley Morrison, who testified that the Defendant had engaged in a Bible study during his time in custody and had expressed to her that he wished to be a better father. She described him as someone with community support and indicated that he would be amenable to rehabilitation if granted an alternative sentence.

Defense counsel argued that the offense was statutorily eligible for probation and asked the court to consider complete probation or a sentence involving split confinement. She emphasized the Defendant's lack of prior criminal history, his efforts at self-improvement, and his stable support system, including his family and church ties.

In its announcement of the sentence, the trial court said it considered the evidence from the trial and sentencing hearing, the presentence report, and the psychosexual evaluation. It also reviewed statistical data from the Administrative Office of the Courts regarding sentencing practices for comparable offenses. The court further examined the Defendant's physical and mental condition, social history, lack of prior convictions, the nature and circumstances of the offense, deterrence, and rehabilitative potential.

The trial court imposed a sentence of nine years to be served in custody in the Tennessee Department of Correction. In so doing, it emphasized three factors as being particularly important. First, it found that the Defendant was not amenable to rehabilitation and unlikely to comply with probation. It cited as support the Defendant's continued denial of sexual contact despite "irrefutable DNA evidence" and deceptive responses during the psychosexual evaluation. The court acknowledged the Defendant's education, employment, and lack of criminal record, but gave greater weight to his failure to acknowledge any sexual contact with the victim.

The trial court also found that incarceration served to protect society from his future criminal behavior. While it did not view the risk of reoffending as "great," it cited the circumstances of the offense and the findings of the psychosexual evaluation as support for its conclusion. Finally, the court concluded that confinement would effectively deter others from committing similar offenses.

The Defendant filed a timely motion for a new trial, which the trial court denied through entry of a written order on March 15, 2024. Seventeen days later, the Defendant filed a timely notice of appeal. *See* Tenn. R. App. P. 4(a).

## STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The Defendant raises two issues for review in this case: whether the trial court should have imposed the minimum sentence and whether the trial court should have imposed an alternative sentence to incarceration.

Our supreme court has recognized that we review a trial court's sentencing determinations for an abuse of discretion, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). As such, this court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out" in the Sentencing Act. *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). This standard of appellate review also applies to a trial court's decision to grant or deny alternative sentencing. *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012).

In this case, the Defendant was convicted of a Class B felony offense, and the trial court found that he was a Range I, standard offender. Thus, the Defendant faced a sentencing range of eight to twelve years for the conviction. *See* Tenn. Code Ann. § 40-35-112(a)(2) (2019). The trial court's sentence of nine years was within the applicable sentencing range. Moreover, as we discuss below, the trial court's decisions regarding the sentence length and the manner of its service were consistent with the purposes and principles of sentencing. As such, we accord a presumption of reasonableness to the trial court's sentencing decisions and review those decisions for an abuse of discretion.

## ANALYSIS

### A. LENGTH OF SENTENCE

The Defendant first argues that the trial court abused its discretion by imposing a sentence of nine years for his conviction. Although he agrees that the sentence is within

the applicable sentencing range, he asserts that the trial court misapplied the single enhancement factor considered and imposed a sentence longer than necessary to accomplish the purposes and principles of sentencing. The State responds that even if the trial court misapplied an enhancement factor, the sentence should be affirmed because the trial court did not wholly depart from the purposes and principles of the Sentencing Act in imposing the sentence. We agree with the State.

In deciding upon a sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the defendant made on his own behalf; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* Tenn. Code Ann. §§ 40-35-102, -103, -210(b) (2019); *see also Bise*, 380 S.W.3d at 697-98. In addition, the sentence imposed "should be no greater than that deserved for the offense committed" and should "be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

Moreover, in establishing the length of a sentence within the applicable range of punishment, a trial court must consider, but is not bound by, the following advisory sentencing guidelines:

(1)     The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2)     The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2019). In addition, the "sentence length within the range should be consistent with the purposes and principles" of the Sentencing Act. *Id.* § 40-35-210(d).

Although the trial court must consider applicable enhancement and mitigating factors, these factors are advisory only.  *See Bise*, 380 S.W.3d at 699 n.33, 706.  In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is consistent with the purposes and principles of [the Sentencing Act]."  *Carter*, 254 S.W.3d at 343 (citation and internal quotation marks omitted).  To this end, we have also recognized that "a maximum sentence within the appropriate range, in the total absence of any applicable enhancement factors, and even with the existence of applicable mitigating factors, should be upheld as long as there are reasons consistent with the statutory purposes and principles of sentencing."  *State v. Chapman*, No. M2011-01670-CCA-R3-CD, 2013 WL 1035726, at *9 (Tenn. Crim. App. Mar. 13, 2013), *no perm. app. filed*.

The Defendant challenges whether the trial court properly applied enhancement factor (7) to increase the length of the sentence.  This factor permits a court to enhance a sentence when "[t]he offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement[.]"  Tenn. Code Ann. § 40-35-114(7).  In applying this factor, a trial court must examine the defendant's "motive for committing the offense."  *State v. Arnett*, 49 S.W.3d 250, 261 (Tenn. 2001).  However, the State need not prove that the defendant's desire for pleasure or excitement was his or her singular motive.  As our supreme court has recognized, "[e]nhancement factor (7), unlike most of the other sentencing factors, calls into question a defendant's reasons for committing a crime.  Human motivation is a tangled web, always complex and multifaceted."  *State v. Kissinger*, 922 S.W.2d 482, 491 (Tenn. 1996).

Importantly, "[t]he mere absence of proof of some other motivation for committing the offense is insufficient to establish, by a preponderance of the evidence, that pleasure or excitement was the motive."  *State v. Appelt*, No. E2020-01575-CCA-R3-CD, 2022 WL 2236316, at *13 (Tenn. Crim. App. June 22, 2022) (citation and internal quotation marks omitted), *no perm. app. filed*.  Thus, our supreme court has required that the State bring forth objective evidence supporting the application of this factor.  *See Arnett*, 49 S.W.3d at 262.

In sexual offense cases, this objective evidence may include, but is not limited to, "sexually explicit remarks and overt sexual displays made by the defendant, such as fondling or kissing a victim or otherwise behaving in a sexual manner, or remarks or behavior demonstrating the defendant's enjoyment of the sheer violence of the rape."  *Id.*  Other evidence may include that the defendant isolated the victim before the sexual assault.  *See, e.g.*, *State v. Zeigler*, No. M2017-01091-CCA-R3-CD, 2019 WL 484647, at *22 (Tenn. Crim. App. Feb. 7, 2019) (upholding application of this factor in a rape case where "[t]he

trial court noted the Defendant's effort to 'orchestrate[] the absence of other individuals, including his daughter' when taking the victim to an isolated area"), *no perm. app. filed*. The sentencing court may also consider whether an orgasm occurred along with all of the other circumstances in the case. *See Kissinger*, 922 S.W.2d at 490-91 ("That orgasm did or did not occur is simply one factor a court may consider in determining whether the offender committed the offense to gratify the offender's desire for pleasure or excitement.").

In this case, although the trial court did not specifically identify the reasons why it applied enhancement factor (7), the preponderance of the evidence supports its application. *See State v. Tice*, No. M2021-00495-CCA-R3-CD, 2022 WL 2800876, at *52 (Tenn. Crim. App. July 18, 2022) (affirming application of an enhancement factor from proof in the record when "the trial court did not specifically identify the facts on which it relied" in finding the factor), *perm. app. denied* (Tenn. Dec. 14, 2022). During the trial, the Defendant's lawyer admitted during closing argument that the Defendant had sex with the victim, though the lawyer argued that the sexual encounter was consensual. For her part, the victim testified that the Defendant brought her alcoholic drinks and was flirting with her while dancing. As the evening progressed, she felt sick, and the Defendant escorted her from the bar and placed her in the back seat of the car. There, the Defendant referred to her multiple times by a nickname, climbed into the back seat with her, and removed her pants before penetrating her with his penis. Although she tried to resist, he subdued her and completed the act. The State's expert evidence showed that the Defendant's semen was present inside the victim.

Although not overwhelming, the preponderance of the evidence supports the trial court's finding that at least one motivation of the Defendant's actions was his desire for pleasure or excitement. Because the record supports the trial court's application of enhancement factor (7) to the Defendant's conviction, the Defendant is not entitled to relief on this ground.

Nevertheless, even if the trial court misapplied this enhancement factor, it would not warrant a new sentencing hearing. As our supreme court held in *Bise*,

> [A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

8

*Bise*, 380 S.W.3d at 706. Stated another way, to obtain relief from a within-range sentence, a defendant cannot merely allege that the trial court misapplied enhancement or mitigating factors. Instead, the Defendant must also show that the sentence is not supported by "other reasons consistent with the purposes and principles of sentencing," such that the court "wholly departed" from the Sentencing Act. *See id.*; *State v. Hendrix*, No. W2015-01671-CCA-R3-CD, 2016 WL 3922939, at *8 (Tenn. Crim. App. July 15, 2016) ("As we previously noted, the court's misapplication of certain enhancement factors does not invalidate its within-range sentence unless the court wholly departed from the Sentencing Act."), *perm. app. denied* (Tenn. Nov. 22, 2016).

In this case, the trial court imposed a nine-year sentence, which is near the bottom of the applicable sentencing range. *See* Tenn. Code Ann. § 40-35-112(a)(2). Our review of the record shows that the trial court carefully considered the purposes and principles of sentencing and certainly did not "wholly depart" from the Sentencing Act in setting the length of the Defendant's sentence. As such, even if the trial court improperly applied enhancement factor (7)—and it did not—the Defendant would not be entitled to relief.

## B.   ALTERNATIVE SENTENCING

The Defendant next argues that the trial court abused its discretion in ordering him to serve the full sentence in custody. More specifically, he asserts that an alternative sentence to incarceration was appropriate because he had no criminal history, obtained his GED and several vocational certificates while incarcerated, and had a supportive church community willing to keep him accountable. The State responds that the trial court acted within its discretion given the seriousness of the offense and the Defendant's lack of amenability to correction. We agree with the State.

"Any sentence that does not involve complete confinement is an alternative sentence." *State v. Sanders*, No. M2023-01148-CCA-R3-CD, 2024 WL 1739660, at *3 (Tenn. Crim. App. Apr. 23, 2024) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. July 17, 2024). Our supreme court has recognized that "[t]he [Sentencing] Act requires a case-by-case approach to sentencing, and [it] authorizes, indeed encourages, trial judges to be innovative in devising appropriate sentences." *Ray v. Madison Cnty.*, 536 S.W.3d 824, 833 (Tenn. 2017) (citation and internal quotation marks omitted). "[I]ndividualized punishment is the essence of alternative sentencing," and the punishment imposed should fit the offender as well as the offense. *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

9

Pursuant to Tennessee Code Annotated section 40-35-103(1) (2019), sentences involving confinement may be ordered if they are based on one or more of the following considerations:

(A)     whether "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct";

(B)     whether "[c]onfinement is necessary to avoid depreciating the seriousness of the offense[,] or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses"; or

(C)     whether "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]"

And, of course, the trial court must consider the defendant's potential for rehabilitation in determining whether to impose an alternative sentence.  *See* Tenn. Code Ann. § 40-35-103(5).

Even if a defendant is eligible for probation, the burden of establishing suitability for probation rests with the defendant.  *See* Tenn. Code Ann. § 40-35-303(b) (2019).  This burden also requires showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant."  *Carter*, 254 S.W.3d at 347.  To that end, when considering whether a defendant has met this burden, the trial court should consider "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017); *State v. Francis*, No. M2022-01777-CCA-R3-CD, 2024 WL 4182870, at *6 (Tenn. Crim. App. Sept. 13, 2024), *no perm. app. filed*.

In ordering the Defendant to serve the nine-year sentence in confinement, the trial court stated that it had considered multiple sources of information and statutory sentencing factors.  These included the evidence presented at both the trial and sentencing hearing, the presentence report—including the results of the validated risk and needs assessment—and the Defendant's psychosexual evaluation.  The court also reviewed statistical data compiled by the Administrative Office of the Courts regarding sentencing practices for comparable offenses in Tennessee.  Additionally, the court considered the Defendant's physical and mental condition, social history, and absence of a prior criminal record.  It further evaluated

10

the nature and circumstances of the offense, assessed whether an alternative sentence would effectively deter others, and examined the Defendant's rehabilitative potential, including his likelihood of complying with the conditions of probation.

Considering this information, the trial court ordered that the Defendant serve the sentence in custody, giving weight to three factors in particular. First, the court concluded that the Defendant was not amenable to rehabilitation and would not likely comply with the conditions of probation. It observed that the Defendant continued to deny any sexual contact with the victim despite the "irrefutable DNA evidence" that his semen was found inside of her. It also gave weight to the findings in the psychosexual evaluation that the Defendant was "deceptive" about his sexual history.

The Defendant challenges this conclusion, asserting that the trial court did not give weight to his education, employment, and lack of criminal convictions. Although the trial court specifically mentioned these factors in its overall sentencing analysis, it placed more significance on the evidence that the Defendant had not accepted responsibility for his actions and refused to acknowledge his wrongdoing. We have frequently recognized that "[a] defendant's failure to accept responsibility weighs against a grant of probation and is sufficient in and of itself to support the denial of probation." *State v. Ford*, No. E2019-00684-CCA-R3-CD, 2020 WL 4193711, at *9 (Tenn. Crim. App. July 21, 2020), *no perm. app. filed*. The trial court properly relied upon the Defendant's failure to accept responsibility as a significant factor in its analysis.

Second, the court weighed the interests of society in being protected from the risk of the Defendant's future criminal conduct. The Defendant also challenges this conclusion, asserting that Tennessee Code Annotated section 40-35-103(1) speaks in terms of protecting society from a defendant with a long history of criminal conduct. He argues that the trial court improperly applied this factor because he has no previous criminal convictions. We respectfully disagree.

In considering this factor, the court specifically noted that it did not believe that the risk of future criminal conduct was "great," but it was influenced by the nature and circumstances of the offense. In its earlier discussion of these circumstances, the court recounted that "the psychosexual evaluation was very troubling at times to this Court, including the results of the examination supporting the conclusion that at times there were significant reactions indicating deception." That evaluation rated the Defendant as "a moderate-high [risk] for sexual recidivism." It also identified a need for treatment to address his dynamic risk factors, including "lack of significant influences, intimacy deficits, sexual self-regulation, and general self-regulation." It also specifically

11

acknowledged that the Defendant's "[u]se and misuse of substances disinhibits his already poor decision making and elevates his risk." This finding is significant given that the evaluation also concluded that the Defendant "appears to have a significant alcohol and substance abuse issue" and that these untreated issues contributed to the offense.[1] We cannot conclude that the trial court's concern about the risk of future criminal conduct was unwarranted or unsupported by the record simply because he lacked a record of criminal convictions.

Finally, the trial court concluded that confinement was particularly suited to deter others likely to commit similar offenses. The Defendant does not challenge this finding, and we cannot conclude that the trial court's reliance on this factor was improper, particularly in a case involving intentional or knowing criminality. *See State v. Hooper*, 29 S.W.3d 1, 11 (Tenn. 2000) ("Actions that are the result of intentional, knowing, or reckless behavior . . . are probably more deterrable than those which are not the result of a conscious effort to break the law.").

As is typically the case with the review of sentencing issues, the standard of appellate review is important. In this case, the trial court identified the correct standards of law that applied to its consideration of alternative sentencing. It considered and weighed the purposes and principles of sentencing, as well as the appropriate statutory and common-law factors for alternative sentencing. It then made a reasoned choice between acceptable alternatives after considering the relevant facts on the record. Because the trial court's sentence reflects a decision based on the purposes and principles of sentencing, its decision is entitled to a presumption of reasonableness. *See Caudle*, 388 S.W.3d at 279. As such, we conclude that the trial court acted within its discretion to deny an alternative sentence and impose a sentence of full incarceration. The Defendant is not entitled to relief on this ground.

---

[1] The Defendant's brief repeatedly refers to him having "no prior criminal history." Although the Defendant has no record of criminal convictions, he does have a significant history of criminal behavior. During the psychosexual evaluation, the Defendant admitted to unlawfully using substances for more than a decade and to unlawfully selling controlled substances while in a gang. *See State v. Frausto-Magallanes*, No. M2020-01450-CCA-R3-CD, 2021 WL 5274815, at *6 (Tenn. Crim. App. Nov. 12, 2021) (affirming denial of alternative sentence, in part, when "Defendant admitted that he has a long history of marijuana and cocaine use, which supports a finding that he has a long history of criminal conduct"), *no perm. app. filed*. Indeed, the trial court referred to the Defendant's own substance use as part of the circumstances surrounding the offense.

**CONCLUSION**

In summary, we hold that the trial court acted within its discretion in considering the length of the Defendant's sentence and the manner of its service. We respectfully affirm the judgment of the trial court.

s/ *Tom Greenholtz*

TOM GREENHOLTZ, JUDGE